UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
ROBERT EDWARD WHITESIDE,           :
                                   :
         Petitioner,               :   Civ. No. 20-5544 (NLH)
                                   :
    v.                             :   OPINION
                                   :
                                   :
FORT DIX FEDERAL PRISON,           :
                                   :
         Respondent.               :
_____:

APPEARANCES:

Gilbert J. Scutti, Esq.
Law Office of Gilbert J. Scutti
31 Station Avenue
Somerdale, NJ 08083

    Attorneys for Petitioner

Rachael A. Honig, Acting United States Attorney
Elizabeth Pascal, Assistant United States Attorney
Office of the U.S. Attorney
401 Market Street
PO Box 2098
Camden, NJ 08101

    Counsel for Respondent

HILLMAN, District Judge

Petitioner Robert Edward Whiteside filed an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 7. He alleges that his medical conditions and FCI Fort Dix's failure to properly address the novel coronavirus COVID-19 pandemic put him at increased risk of harm. The United States

opposes the petition and asserts this Court lacks jurisdiction under § 2241 to address the conditions of confinement.  ECF No. 16.

For the reasons that follow, the Court concludes that the current petition does not allege the extraordinary circumstances necessary to invoke this Court's habeas jurisdiction.  The Court will dismiss the petition.

I.  BACKGROUND

Petitioner pled guilty to interstate domestic violence, 18 U.S.C. § 2261(a)(2), (b)(5) (Count 2), and one count of structuring monetary transactions to avoid reporting requirements, 31 U.S.C. § 5324(a)(3), (d)(1) (Count 4 On March 7, 2016).  United States v. Whiteside, No. 5:15-CR-126 (E.D.N.C. Mar. 7, 2016) (ECF No. 49).  On June 10, 2016, the trial court sentenced Petitioner to a total of 120 months' imprisonment with 3 years of supervised release.  Id. (June 10, 2016) (ECF No. 61).  Assuming Petitioner receives all good conduct time available, his projected release date is December 15, 2022.  See ECF No. 16-2 at 19.

"At present, COVID-19 requires no introduction: the novel coronavirus causing this disease has spread around the world, resulting in an unprecedented global pandemic that has disrupted every aspect of public life."  Mays v. Dart, 974 F.3d 810, 814 (7th Cir. 2020).  President Trump signed the Coronavirus Aid,

2

Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2) (2020) into law on March 27, 2020. The CARES Act states in relevant part:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

Pub. L. No. 116-136, § 12003(b)(2) (2020). In a memorandum dated April 3, 2020, Attorney General William Barr directed the Bureau of Prisons ("BOP") to "give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities . . . ." Memorandum for Director of Bureau of Prisons, Apr. 3, 2020, available at https://www.justice.gov/file/1266661/download (last visited May 28, 2021) ("April 3 Memorandum").

The April 3 Memorandum directed officials to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC," beginning at three particularly hard-hit BOP facilities, FCI Oakdale, FCI Danbury, and FCI Elkton, as well as "similarly situated facilities where you determine that COVID-19 is materially affecting operations." Id. at 2. Petitioner originally filed this § 2241 petition asking to be released from Fort Dix to serve out the remainder of his

3

sentence on home confinement under the CARES Act. ECF No. 1. The Court directed the United States to answer the petition. ECF No. 10.

After the United States submitted its answer, ECF No. 16, Petitioner wrote to the Court alleging that the Bureau of Prisons transferred 60 inmates from FCI Elkton, Ohio, one of the federal facilities identified by Attorney General Barr as being particularly hard-hit by COVID-19, to FCI Fort Dix. ECF No. 23. He alleged that four Elkton transferees were placed into his unit. Id. at 2. The Court ordered the United States to supplement its answer with "the status of FCI Fort Dix's safety measures, actions taken to counteract and mitigate the spread of the coronavirus, updated number of positive cases, and the actions taken in regards to the arrivals from FCI Elkton." ECF No. 24.

The United States complied and submitted a declaration from Associate FCI Fort Dix Warden Kimberly Kodger. ECF No. 26; Declaration of Kimberly Kodger ("Kodger Dec.") ECF No. 26-1. Associate Warden Kodger admitted that not one, but four separate transfers from Elkton to Fort Dix had taken place "to increase the opportunities for inmates to practice social distancing in compliance with the CDC guidelines at [FCI Elkton]." Kodger Dec. ¶ 2. In total, 298 inmates were transferred from Elkton to Fort Dix, 17 of whom tested positive for COVID-19 upon arrival

4

at Fort Dix.  Id. ¶¶ 9-11, 14.  At the time of the transfers, 11 staff members tested positive, although Associate Warden Kodger noted that Fort Dix did not test staff on a regular basis.  Id. ¶ 8.  The BOP denied that any Elkton transferees were placed into Petitioner's housing unit, 5741.  Id. ¶ 13.  Associate Warden Kodger conceded that there was an "outbreak" in two areas of the West Compound, Unit 5812 and the Special Housing Unit ("SHU"), but denied they were related to the Elkton transferees. Id. ¶ 16.  Former Fort Dix Warden David Ortiz asked the BOP to place a 30-day movement moratorium on incoming and outgoing transfers to and from Fort Dix because "[d]ue to the physical structure of the facility, social distancing is difficult."  Id. ¶ 19; ECF No. 26-1 at 28.  The final transfer from Elkton to Fort Dix occurred after Warden Ortiz requested the movement moratorium.  Kodger Dec. ¶¶ 14, 16.

After receiving and reviewing the supplementary materials from the BOP, the Court concluded that it would assist the Court to appoint counsel under 18 U.S.C. § 3006A.  ECF No. 30. Counsel entered an appearance and supplemented Petitioner's original pro se filing.[1]  Through counsel, Petitioner withdrew his request for CARES Act home confinement and compassionate

---

[1] The Court expresses appreciation to Petitioner's counsel for accepting this pro bono appointment and performing within the highest traditions of the bar.

5

release under the First Step Act.² ECF No. 40 at 1-2. Instead, he requested the Court to solely review the petition under § 2241. Id. at 2. "The government can submit blue ribbon declarations singing the praises of what is being done to control COVID-19 at Fort Dix FCI. Nonetheless, to paraphrase Galileo: And yet COVID-19 moves throughout the prison." Id.

> Dropped into that setting is Robert Whiteside . . . . He suffers from obesity, inflammatory bowel disease, also known as Crohn's Disease, sleep apnea, high blood pressure (by history), chest pains and shortness of breath, and he carries a family history of heart disease and cancer. His health problems and the BOP's failure to adequately protect him create the perfect constitutional storm, crying out for judicial intervention.

Id. at 4. Petitioner asks the Court to exercise jurisdiction under § 2241 and conduct an evidentiary hearing into the conditions at Fort Dix. Id. The United States opposes the request and asserts the Court lacks jurisdiction under § 2241. ECF No. 43.

II. DISCUSSION

"A person in federal custody may petition for a writ of habeas corpus under [28 U.S.C. § 2255] or Section 2241, depending on the nature of the challenge: 'a federal prisoner's challenge to the execution of a sentence is properly filed

---

² Petitioner filed a motion for compassionate release in his sentencing court. United States v. Whiteside, No. 5:15-CR-126 (E.D.N.C.).

pursuant to [Section] 2241, rather than Section 2255, because Section 2255 allows a federal prisoner to challenge only the legality of the original imposition of a sentence.'" Llewellyn v. Wolcott, No. 20-CV-498, 2020 WL 2525770, at *3 (W.D.N.Y. May 18, 2020) (emphasis omitted) (first alteration added) (quoting James v. Walsh, 308 F.3d 162, 166 (2d Cir. 2002)). Petitioner does not challenge the validity of his original conviction and sentence; therefore, if this Court has habeas jurisdiction over the petition it must originate from § 2241.

Section 2241 states in relevant part that "[t]he writ of habeas corpus shall not extend to a prisoner unless [h]e is in custody under or by color of the authority of the United States or . . . [h]e is custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). Here, Petitioner asserts he must be released from custody because the conditions at Fort Dix combined with his medical conditions violate the Constitution. The plain text of § 2241 would appear to permit such a challenge, but there is a spilt among the courts that have considered the question during the COVID-19 crisis. See, e.g., Wilson v. Williams, 961 F.3d 829, 837 (6th Cir. 2020) ("To the extent petitioners argue the alleged unconstitutional conditions of their confinement can be remedied only by release, 28 U.S.C. § 2241 conferred upon the district court jurisdiction to consider the petition."); Houck

7

v. Moser, No. 3:20-CV-255, 2021 WL 1840827, at *1 (W.D. Pa. May 7, 2021) ("[H]abeas corpus is not an available remedy to a convicted federal defendant seeking release from BOP custody based on a claim of unconstitutional conditions of confinement, even conditions resulting from a pandemic . . . ."); Llewellyn, 2020 WL 2525770, at *4 (finding jurisdiction under § 2241 because petitioner "seeks only immediate release from physical custody" putting his claims "squarely within th[e] traditional scope of habeas corpus." (alteration in original)); Evil v. Whitmer, No. 1:20-CV-343, 2020 WL 1933685, at *3 (W.D. Mich. Apr. 22, 2020) ("But, the relief Petitioner seeks — release from custody — is available only upon habeas corpus review. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action . . . .").

Neither the Supreme Court nor the Third Circuit have issued a precedential decision regarding convicted and sentenced federal prisoners' ability to seek release via a writ of habeas corpus due to unconstitutional conditions of confinement, but dicta from the Supreme Court suggests it is theoretically possible. "It is clear . . . from the common-law history of writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from

8

illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973); see also Ziglar v. Abbasi, 137 S. Ct. 1843, 1862 (2017); Bell v. Wolfish, 441 U.S. 520, 526, n.6 (1979). In Preiser, the Court acknowledged that allegations of unconstitutional treatment and prison conditions have traditionally been limited to civil rights actions, but "[t]his is not to say that habeas corpus may not also be available to challenge such prison conditions. When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal." 411 U.S. at 499.

The Third Circuit relied on Preiser in its precedential decision allowing immigration detainees to challenge their COVID-19-related conditions of confinement under § 2241. "The traditional function of the writ of habeas corpus is to secure release from unlawful executive detention. Where a petitioner seeks release from detention, habeas . . . is proper." Hope v. Warden York Cty. Prison, 972 F.3d 310, 323 (3d Cir. 2020). "Given the extraordinary circumstances that existed in March 2020 because of the COVID-19 pandemic, we are satisfied that their § 2241 claim seeking only release on the basis that unconstitutional confinement conditions require it is not improper." Id. at 324-25. Other courts in this District have assumed that Hope applies to convicted prisoners as well. See,

9

e.g., Aigebkaen v. Warden, No. 20-5732, 2020 WL 6883438, at *4 (D.N.J. Nov. 24, 2020); Byrne v. Ortiz, No. 20-12268, 2020 WL 7022670, at *3 (D.N.J. Nov. 30, 2020). The Third Circuit declined to decide in Hope "whether a § 2241 claim may be asserted in less serious circumstances." Hope, 972 F.3d at 325 n.5.

In light of Preiser and Hope, the Court is persuaded that convicted federal prisoners may file § 2241 petitions challenging their conditions of confinement in extremely limited circumstances. "As the Supreme Court has instructed: 'habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.'" Hope, 972 F.3d at 324 (quoting Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., 411 U.S. 345, 351 (1973)). However, the Court concludes that convicted and sentenced federal prisoners may only resort to a habeas remedy under § 2241 for allegedly unconstitutional conditions of confinement in situations when no action short of release would be sufficient to prevent irreparable constitutional injury. See Wilson v. Williams, 961 F.3d 829, 838 (6th Cir. 2020) ("Our precedent supports the conclusion that where a petitioner claims that no

set of conditions would be constitutionally sufficient the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement."). Petitioner has not shown that such conditions are present at FCI Fort Dix.

Petitioner alleges a set of conditions at Fort Dix that put him at significant risk for COVID-19 when combined with his medical conditions. He alleges the inmates are housed together in small spaces and are not provided adequate opportunities for social distancing when sleeping and eating. ECF No. 40 at 3. He states the provided masks "are cotton and are a one size fits all, which means they properly fit few." Id. "Bottom line - the inmates are not given the same protective gear and considerations as the guards; hence, the severe outbreak." Id. Based on these allegations, it appears Petitioner has avenues of relief besides an order directing his release.

Petitioner alleges problems with the housing and mask distribution, but he did not file a civil rights action seeking injunctive relief in the form of an order directing the BOP to provide better fitting masks or to rearrange the living quarters. See, e.g., Brown v. Warren, No. 20-7907 (D.N.J. filed June 26, 2020) (class action under 42 U.S.C. § 1983 regarding county jail COVID-19 protocols). Nor does he explain why injunctive relief short of release from prison would not be

enough to address the purportedly unconstitutional conditions.[3] The Court also takes into consideration that vaccinations for COVID-19 have become available since the filing of this petition. In short, the petition has not alleged the extraordinary circumstances necessary to invoke this Court's habeas jurisdiction because Petitioner has not shown that there are no other actions Fort Dix can take to protect him other than releasing him from custody. The Court will dismiss the petition.

    An appropriate Order will be entered.


Dated: July 13, 2021            s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.

---

[3] In Ziglar v. Abbasi, 137 S. Ct. 1843 (2017) the Supreme Court stated that expanding the remedy announced in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) "is now a 'disfavored' judicial activity." 137 S. Ct. at 1857. However, the Supreme Court also noted that suits seeking only injunctive relief are acceptable alternatives to damages suits and are not subject to the "special factors" analysis set forth in Abbasi. Id. at 1862-63. Moreover, an action seeking injunctive relief for deliberate indifference to a serious medical need is a heartland Bivens claim rather than an extension of such a claim.